UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COMMUNICO, LTD.                           :
                                          :
      Plaintiff,                          :
                                          :
v.                                        :     Case No. 3:14-CV-1887 (RNC)
                                          :
DECISIONWISE, INC.,                       :
                                          :
      Defendant.                          :
                                          :

RULING AND ORDER

      Plaintiff Communico, Ltd., brings this suit against

defendant DecisionWise, Inc., alleging trademark infringement and

unfair competition in violation of the Lanham Act and the

Connecticut Unfair Trade Practices Act ("CUTPA").  DecisionWise

moves to dismiss the complaint under Rule 12(b)(2) for lack of

personal jurisdiction and Rule 12(b)(6) for failure to state a

plausible claim.  For reasons that follow, the motion is denied.

I. Background

      The complaint and other documents subject to judicial notice

show the following.[1]  Communico is a Connecticut company that

_____

      [1]  In considering a motion to dismiss, a court "may consider
any written instrument attached to the complaint, statements or
documents incorporated into the complaint by reference, . . . and
documents possessed by or known to the plaintiff and upon which
it relied in bringing the suit."  ATSI Commc'ns, Inc. v. Shaar
Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).
Because DecisionWise has challenged personal jurisdiction, it is
also proper to take judicial notice of affidavits submitted by
the parties.  See Whitaker v. American Telecasting, Inc., 261
F.3d 196, 208 (2d Cir. 2001).

1

provides employee-training programs in the fields of customer relations, communication skills, leadership development, employee engagement and coaching. Since 1986, Communico has used the trademark "MAGIC" in connection with course materials and educational services.[2] Communico registered the marks "MAGIC" and "THE MAGIC OF CUSTOMER RELATIONS" with the U.S. Patent and Trademark Office ("PTO") in March 2011. On its website, Communico advertises a book written by the company's President and Senior Vice President entitled "How to Talk to Customers: Create a Great Impression Every Time with MAGIC."[3]

DecisionWise is a Utah company.[4] Like Communico, it provides employee-training programs in the fields of customer relations and communication skills. In November 2013, DecisionWise began using the marks "MAGIC" and "Engagement Magic" in connection with employee-training programs and advertising materials. See Larkin Decl. (ECF No. 23). In September 2014, DecisionWise registered the mark "Engagement Magic" with the PTO. At least one Communico customer has mistakenly believed that

---

[2] "MAGIC" stands for Make A Great Impression on the Customer.

[3] Communico's website is located at http://www.communicoltd.com/.

[4] DecisionWise operated as a Utah corporation through December 31, 2014. For reasons unrelated to this action, DecisionWise converted to an LLC on January 1, 2015. Maylett Decl. ¶ 2.

DecisionWise's marketing communications containing the MAGIC trademark originated from Communico, or that Communico and DecisionWise were somehow affiliated.

DecisionWise operates and maintains a website that displays the infringing MAGIC trademark.[5]  The website includes a contact button that provides a toll-free telephone number, a local telephone number, an email address, and a contact form that permits users to contact DecisionWise directly.  Users can sign up for an email newsletter, which is sent by DecisionWise to subscribers on a regular basis.  Users also can sign up for live webinars and view recordings of past webinars provided by DecisionWise employees.

In the fall of 2014, DecisionWise published a book entitled "MAGIC: Five Keys to Unlock the Power of Employee Engagement" (the "infringing book").  Though DecisionWise does not directly take orders for or ship the infringing book, its website advertises the book for sale via a third-party link to Amazon.com.  The book is also available for sale at Barnes & Noble, which has locations throughout the United States, including Connecticut.[6]

---

[5] DecisionWise's website is located at http://www.decision-wise.com.

[6] At the time the complaint was filed, DecisionWise's website also contained a third-party link to purchase the book from Barnes & Noble's website.

DecisionWise does not have any employees or property in Connecticut, does not file a tax return in Connecticut, and, as of 2015, had no ongoing business relationships with Connecticut clients. <u>See</u> Maylett Decl. (ECF No. 17-3). Through its website and other services, however, DecisionWise has done business with Connecticut residents. DecisionWise, which provides services for approximately 150 to 200 organizations per year, received approximately $13,600 from two Connecticut companies in 2011 for conducting employee surveys. In addition, at least one Connecticut resident purchased the infringing book via a third-party link on DecisionWise's website, at least one Connecticut resident has participated in one of DecisionWise's webinars, and Connecticut residents regularly receive DecisionWise's marketing communications and email solicitations.

Communico brought the present suit after an exchange of letters and phone calls during which the parties were unable to resolve disputes about the use of the "MAGIC" marks. The complaint alleges that DecisionWise's use of the "MAGIC" marks constitutes trademark infringement, false designation of origin, and unfair competition under the Lanham Act and CUTPA. Communico seeks to enjoin DecisionWise from using the marks, an order directing DecisionWise to recall products containing the marks, and damages stemming from DecisionWise's past use of the marks.

II. Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. Whitaker, 261 F.3d at 208. "[T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Before discovery and in the absence of a "full-blown evidentiary hearing," a plaintiff "need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (quoting Ball, 902 F.2d at 197). "A plaintiff can make this showing through his own affidavits and supporting materials . . . containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." Whitaker, 261 F.3d at 208 (citations, quotations, and brackets omitted). "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id. (quotations and brackets omitted).

When, as here, a nonresident defendant challenges personal jurisdiction in a federal question case, "the Court must engage in a two-step analysis." Chloe v. Queen Bee of Beverly Hills,

LLC, 616 F.3d 158, 163 (2d Cir. 2010). "First, we apply the forum state's long-arm statute." Id. "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164.

A. *Connecticut's Long-Arm Statute*

The long-arm statute that applies to nonresident LLCs[7] provides:

> [A] court may exercise personal jurisdiction over [a nonresident LLC] who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state . . .; [or] (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

Conn. Gen. Stat. § 52-59b(a). Because the statute was modeled on New York Civil Practice Law § 302, Connecticut courts "find pertinent the judicial interpretation given to that New York statute." Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179, 180-81 (1981).

Communico contends that personal jurisdiction over DecisionWise is provided by subsection (a)(2) or (a)(3) of the

---

[7] The parties assume, and I agree, that Conn. Gen. Stat. § 52-59b, which applies to nonresident partnerships, also applies to LLCs. See Marlin Firearms, Co. v. Wild W. Guns, LLC, No. 3:09-CV-921 RNC, 2013 WL 2405510, at *2 (D. Conn. May 31, 2013) (collecting cases holding that LLCs are subject to § 52-59b, not § 33-929(f), which applies to foreign corporations).

long-arm statute based on its sale of the infringing book to Connecticut residents.  As mentioned, DecisionWise advertises the infringing book on its website, which provides a link to buy the book on Amazon.com., and also appears to have a distribution arrangement with Barnes & Noble.[8]  According to Communico, at least one Connecticut resident has purchased the infringing book after clicking on the link and discovery may reveal additional purchases.

Viewing the record in a light most favorable to Communico, I agree that Communico has established a prima facie case under subsection (a)(2) of the long-arm statute based on an in-state tort.  Trademark infringement is considered a "tort" for purposes of determining long-arm jurisdiction.  See Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc., 312 F. Supp. 2d 247, 253 (D. Conn. 2004).  A trademark infringement "claim is said to arise . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." Id. (quotations omitted).  The sale of an infringing product in a forum, even by a third-party distributor, may constitute a tort in the forum by the defendant if the distributor is acting as the defendant's "agent."  See

_____

[8] According to DecisionWise, the publisher of the infringing book "has arranged for distribution of the Book through a variety of outlets, including Amazon.com and Barnes & Noble."  Maylett Decl. ¶ 14.

7

Conn. Gen. Stat. § 52-59b(a). Courts have given the term "agent"
in the long-arm statute a broad interpretation, finding the
requisite agency relationship when the defendant has entered into
an agreement with a distributor contemplating that the infringing
product would be sold in the forum. See Evergreen Media
Holdings, LLC v. Warren, 105 F. Supp. 3d 192, 198 (D. Conn. 2015)
(citing Dan-Dee Int'l, Ltd. v. KMart Corp., No. 99CIV.11689(DC),
2000 WL 1346865, at *4 (S.D.N.Y. Sept. 19, 2000); Blakeman v. The
Walt Disney Co., 613 F. Supp. 2d 288, 302 (E.D.N.Y. 2009);
Editorial Musical Latino Americana, S.A. v. Mar Int'l Records,
Inc., 829 F. Supp. 62, 64-65 (S.D.N.Y. 1993); Lipton v. The
Nature Co., 781 F. Supp. 1032, 1035-36 (S.D.N.Y. 1992)).

The record permits an inference that DecisionWise undertook
to sell the book in Connecticut through Amazon and Barnes &
Noble, both national retailers. See Evergreen, 105 F. Supp. 3d
at 198 (finding jurisdiction under § 52-59b(a)(2) when
plaintiff's copyright infringement claim was based on sale of
allegedly infringing book in Connecticut through distribution
arrangement with Barnes & Noble); Dan-Dee Int'l, 2000 WL 1346865,
at *4 (finding defendant "must have expected that the [infringing
products] would be sold in New York" by Kmart because defendant
"certainly knew or should have known that Kmart was a national
chain with stores in New York"). Though Communico has not
established the nature of the relationship between DecisionWise

and its distributors, "[a]t this stage in the proceedings, when the Court lacks evidence detailing the nature of [DecisionWise]'s arrangements with its distributors and the extent of its involvement in the Connecticut sales, [Commmunico] is entitled to the benefit of the doubt in making [its] prima facie case that [Decisionwise] was sufficiently involved in the allegedly tortious sales to be reached by Connecticut's long-arm statute." Evergreen, 105 F. Supp. 3d at 198.

Even if Communico cannot establish an agency relationship, and all of DecisionWise's allegedly tortious conduct occurred outside Connecticut (i.e., where DecisionWise or its publisher supplied the infringing book to Amazon or Barnes & Noble), Commmunico can establish personal jurisdiction under subsection (a)(3) of the long-arm statute based on an in-state injury. "[T]he situs of a commercial injury is generally where the plaintiff experiences a loss of business . . . ." Evergreen, 105 F. Supp. 3d at 199 (citations omitted). A customer who buys the infringing book when it is offered for sale in Connecticut may be deceived into thinking she is buying a Communico product. See id. (finding in-state injury when consumers may be diverted from purchasing legitimate copies of copyrighted book). The other requirements of subsection (a)(3) are also satisfied. DecisionWise could have anticipated that the infringing book would be sold in Connecticut and it has continued to sell the

book after receiving letters from Communico requesting that it refrain from using the MAGIC marks.[9]  Communico has made a prima facie showing that DecisionWise "derives substantial revenue from interstate or international commerce."  Conn Gen. Stat. § 52-59b(a)(3)(B).  As mentioned, DecisionWise holds itself out as an international business performing services for 150 to 200 businesses per year.

  B. *Due Process*

Though Connecticut's long-arm statute and "constitutional due process are not coextensive," cases where personal jurisdiction is permitted under the statute but prohibited by due process are "rare."  See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013) (discussing New York statute).  The due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Chloe, 616 F.3d at 164.  Communico has made a prima facie showing that exercising personal jurisdiction over Decisionwise in this case comports with due process.

  i. Minimum Contacts

The principal question in the minimum contacts inquiry is

---

  [9] See Mor-Dall Enterprises, Inc. v. Dark Horse Distillery, LLC, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) ("Post-complaint behavior by a defendant, when the cause of action is for a continuous tort such as trademark infringement, can be relevant to a personal jurisdiction inquiry." (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1563 (Fed. Cir. 1994)).

"whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." Id.  This involves "evaluat[ing] the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).  When the claim arises out of the defendant's contacts with the forum, specific jurisdiction exists if the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002) (quotations omitted).[10]

Communico contends that DecisionWise could have foreseen being haled into court in Connecticut in view of its website and its arrangements with Amazon and Barnes & Noble.  DecisionWise argues that even if that is so, Communico has not shown that DecisionWise "purposefully availed" itself of the privilege of doing business in Connecticut, relying on J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011).  I disagree.

---

[10] Communico argues that the Court has general jurisdiction over DecisionWise.  I disagree.  General jurisdiction exists only when a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State.'"  Licci, 732 F.3d at 170.  Based on the existing record, even construed most generously to Communico, DecisionWise is not "at home" in Connecticut.

11

In <u>Nicastro</u>, the Supreme Court ruled that a New Jersey court could not exercise personal jurisdiction over the foreign manufacturer of a machine that caused an injury in New Jersey. <u>Id.</u> at 888. A distributor had agreed to sell the machine in the United States (but no particular state), up to four machines ended up in New Jersey, and some of the defendant's employees had attended trade shows in the United States but never in New Jersey. <u>Id.</u> at 886. A plurality of the Court stated that the exercise of jurisdiction did not comport with due process because a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." <u>Id.</u> at 882. Justice Breyer's concurrence, which is generally considered to be the controlling opinion,[11] rejected a strict "targeting" rule in favor of the traditional "purposeful availment" rule. <u>See id.</u> at 888 (Breyer, J., concurring). Applying precedent for that rule, the concurrence noted that there was no evidence of a "regular course" of sales in New Jersey or "'something more' such as special state-related design,

_____

[11] Most courts have found that "Justice Breyer's concurring opinion 'furnished the narrowest grounds for the decision and controls.'" <u>In re Chinese-Manufactured Drywall Prod. Liab. Litig.</u>, 753 F.3d 521, 541 (5th Cir. 2014) (quoting <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977)) (citing <u>AFTG-TG, LLC v. Nuvoton Tech. Corp.</u>, 689 F.3d 1358 (Fed. Cir. 2012)).

advertising, advice, or marketing." Id. (discussing Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102 (1987)).

Nicastro does not answer the questions posed in this case.[12] Unlike the plaintiff in Nicastro, Communico has not alleged that DecisionWise merely placed its goods in the stream of commerce with the expectation that they might end up in Connecticut. According to Communico, DecisionWise has "targeted the world" by advertising its products for sale on its website, see id. at 889, sending subscribers marketing communications, and hosting interactive webinars. In addition, DecisionWise has a distribution agreement with Barnes & Noble that may contemplate sales in Connecticut, where numerous Barnes & Noble stores are located.

If DecisionWise were to sell the infringing book to a Connecticut resident directly through its own website, the purposeful availment rule would be satisfied. See Chloe, 616 F.3d at 171 ("[B]y offering bags for sale to New York consumers on the [defendant's] website and by selling bags — including at least one counterfeit [plaintiff's] bag — to New York consumers,

_____

[12] Justice Breyer noted that the case did not answer the exact questions posed here. See id. at 890 ("[W]hat do those standards mean when a company targets the world by selling products from its Web site? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders?").

[defendant] has purposefully availed himself of the privilege of conducting activities within the forum State . . . ." (quotations and brackets omitted)).  The same would be true if DecisionWise or its agents were personally involved in sales via Amazon.  See EnviroCare Techs., LLC v. Simanovsky, No. 11-CV-3458 JS ETB, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (personal jurisdiction appropriate when defendants operated Amazon and eBay accounts selling infringing products, with at least one sale to New York resident); accord McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, No. 16CV8530, 2017 WL 6343627, at *4 (S.D.N.Y. Dec. 12, 2017).

That the infringing books are sold by Barnes & Noble and third-parties on Amazon complicates the issue but does not preclude a finding of purposeful availment.  Under pre-Nicastro precedent in this Circuit, exercising personal jurisdiction over DecisionWise is proper if its relationship with Amazon and Barnes & Noble shows an "attempt to serve" the Connecticut market.  See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 243 (2d Cir. 1999).[13]  Relying on these precedents even after Nicastro, courts

---

[13] In Kernan, the Court of Appeals ruled that a New York court could exercise jurisdiction over a Japanese manufacturer of machines that had an "exclusive sales rights" agreement with a Pennsylvania distributor whereby the distributor would sell the machines "in North America and throughout the world."  Id.  The court stated the agreement "serves as evidence of [the Japanese corporation]'s attempt to serve the New York market, albeit indirectly."  Id.

have found that although the sale of a defendant's product by a third-party distributor is alone insufficient to establish personal jurisdiction, it can be established when a defendant has advertised its product over the internet, a third-party distributor has sold the product in the forum state, and an agreement between the defendant and the distributor contemplated sales in the forum state.[14]  As other courts have recognized, "to allow a defendant to escape personal jurisdiction in a particular forum simply because its interactive website redirects customers to a third-party vendor's site to complete a sale would undermine the 'traditional notions of fair play and substantial justice' that protect both plaintiffs and defendants."  Mor-Dall Enterprises, 16 F. Supp. 3d at 880.

Construing the record in a light most favorable to Communico, Communico may be able to show that DecisionWise has attempted to serve the Connecticut market through its distribution arrangements with Amazon and Barnes & Noble.  As noted above, the exact nature of these arrangements is unclear at the moment.  And the volume of sales of the infringing book in

---

[14] Compare Evergreen Media, 105 F. Supp. 3d at 201 (finding minimum contacts based on sale of copyright-infringing book by Barnes & Noble in Connecticut), with Ikeda v. J. Sisters 57, Inc., No. 14-CV-3570 ER, 2015 WL 4096255, at *2 (S.D.N.Y. July 6, 2015) (declining to exercise personal jurisdiction when defendant had agreement with U.S. distributor but "neither sold products over the internet to customers in the United States nor entered into any contract to perform services in New York State").

Connecticut is also unknown.  Communico may ultimately fail to show a "regular course" of sales or conduct by DecisionWise evincing an attempt to serve the Connecticut market.  But Communico's allegations are sufficient to establish a prima facie case of minimum contacts.[15]

ii. Reasonableness

Once a plaintiff makes a threshold showing of minimum contacts, the defendant may defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).  The principal question is "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Factors to consider include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case;

_____

[15] DecisionWise contends that Communico employees "manufactured" contacts between DecisionWise and Connecticut. If discovery reveals that the only contacts between DecisionWise and Connecticut were manufactured by Communico, exercising personal jurisdiction may not comport with due process. See Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (declining to exercise jurisdiction when "the acts of [plaintiff] brought the infringing product into the forum, not [defendant]'s promotion, advertising, or sales activities").

(3) the plaintiff's interest in obtaining convenient and
effective relief; (4) the interstate judicial system's interest
in obtaining the most efficient resolution of the controversy;
and (5) the shared interest of the states in furthering
substantive social policies." Id. (citing Asahi, 480 U.S. at
113-14).

DecisionWise argues that it should not be subjected to
personal jurisdiction because it is a small organization located
in far-away Utah, making it burdensome to litigate the case in
Connecticut. In addition, Decisionwise argues that it would be
more efficient and more consistent with the shared interests of
the states for the matter to be adjudicated before the Trademark
Trial and Appeal Board ("TTAB") or in the District of Utah.

DecisionWise's arguments are unpersuasive. The record shows
that DecisionWise has done business in Connecticut in the past
and has consulting operations in Europe, Africa and the Middle
East. The conveniences of current technology and modes of
transportation ease the burden of litigation in a distant
forum.[16] There is no reason to think Utah has a stronger
interest in adjudicating this dispute than Connecticut, where

---

[16] See Bank Brussels, 305 F.3d at 129-30 ("Even if forcing
the defendant to litigate in a forum relatively distant from its
home base were found to be a burden, the argument would provide
defendant only weak support, if any, because 'the conveniences of
modern communication and transportation ease what would have been
a serious burden only a few decades ago.'" (quoting Metro. Life
Ins., 84 F.3d at 574)).

Communico has operated for over thirty years and has built its
MAGIC brand.  And DecisionWise has not explained why it would be
more efficient to litigate the case in Utah, where Communico
would be forced to travel, or before the TTAB, which does not
have jurisdiction to adjudicate all the claims at issue.  See
generally B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct.
1293, 1300-01 (2015) (discussing TTAB jurisdiction and
procedures).

III. Motion to Dismiss for Failure to State a Claim

    A complaint must plead "enough facts to state a claim to
relief that is plausible on its face," Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
On a motion to dismiss for failure to state a claim, as with a
motion to dismiss for lack of personal jurisdiction, all factual
allegations are accepted as true and viewed in the light most
favorable to the plaintiff.  Id.

    DecisionWise argues that Communico has failed to state a
plausible claim because its use of the MAGIC mark in the title of
the infringing book is protected by the First Amendment.[17]

_____

    [17] DecisionWise's arguments have addressed only Communico's
claims related to the infringing book.  Though defense counsel
suggested at oral argument that DecisionWise's other uses of the
MAGIC marks might be protected by the First Amendment,
DecisionWise has not explained how these other uses - mostly in

DecisionWise's reliance on the First Amendment raises a substantial issue. On the present record, however, it does not appear that DecisionWise's use of the mark is protected by the First Amendment as a matter of law.

In general, to establish a trademark infringement claim a plaintiff must show "that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995) (quotation omitted).[18] For purposes of this motion, DecisionWise has assumed that Communico's registered marks are valid. To determine the likelihood of confusion, courts consider the "Polaroid factors": "(1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap' . . .; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the

---

advertising its commercial products - are "expressive works" entitled to the same First Amendment protections as literary titles. See generally Brown v. Entm't Merchants Ass'n, 564 U.S. 786, 790 (2011) (discussing content considered expressive).

[18] Communico has brought claims under both 15 U.S.C. § 1114, which protects against the unauthorized use of registered marks, and 15 U.S.C. § 1125, which protects against a "false designation of origin," including coverage for unregistered marks. The showing required to establish either type of claim is essentially the same. See Pirone v. MacMillan, Inc., 894 F.2d 579, 584–85 (2d Cir. 1990).

buyers." <u>Id.</u> (citing <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287

F.2d 492, 495 (2d Cir. 1961)).[19]

In the case of an artistic work, the protections of the

Lanham Act apply "only where the public interest in avoiding

consumer confusion outweighs the public interest in free

expression." <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 999 (2d Cir.

1989). "[L]iterary titles do not violate the Lanham Act 'unless

the title has no artistic relevance to the underlying work

whatsoever, or, if it has some artistic relevance, unless the

title explicitly misleads as to the source or the content of the

work.'" <u>Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.</u>, 996

F.2d 1366, 1379 (2d Cir. 1993) (quoting <u>Rogers</u>, 875 F.2d at 999).

DecisionWise's use of the MAGIC mark in the title of the

infringing book has some artistic relevance. As the Ninth

Circuit has explained, the requisite "level of relevance merely

must be above zero." <u>See E.S.S. Entm't 2000, Inc. v. Rock Star</u>

<u>Videos, Inc.</u>, 547 F.3d 1095, 1100 (9th Cir. 2008) (applying

<u>Rogers</u> test); <u>see also Twin Peaks</u>, 996 F.2d at 1379 ("In this

case, there would seem little question that the title is of some

_____

[19] The likelihood of confusion is a "factual question,
centering on the probable reactions of prospective purchasers of
the parties' goods." <u>Pirone</u>, 894 F.2d at 584 (quotation
omitted). A claim may be dismissed as a matter of law only where
the plaintiff "cannot possibly show confusion as to source or
sponsorship." <u>Id.</u> In other words, claims "may be dismissed as a
matter of law where the court is satisfied that the products or
marks are so dissimilar that no question of fact is presented."
<u>Id.</u> (quotation omitted).

artistic relevance to the book.").  The issue, then, is whether
Communico can show that the use of the MAGIC mark in the title of
the book explicitly misleads as to the source of the book.

To determine whether a title "explicitly misleads," courts
apply the Polaroid factors, keeping in mind that the "likelihood
of confusion must be particularly compelling to outweigh the
[defendant's] First Amendment interest."  Twin Peaks, 996 F.2d at
1379.  Addressing those factors, the parties' marks are similar,
the parties use the marks in connection with similar products,
and it seems that at least one Communico customer has actually
been confused as to the source of the infringing book.  Though
none of these factors is dispositive, see, e.g., Rogers, 875 F.3d
at 1011 (evidence of actual confusion alone is insufficient),
they weigh in favor of finding that the infringing book's title
explicitly misleads as to the source of the book.

The record with regard to the other factors does not enable
DecisionWise to prevail as a matter of law.  DecisionWise
principally argues that Communico's MAGIC mark is weak.  It cites
hundreds of other similar trademarks registered in the same
international classes and other books with similar names.
However, the probative value of this evidence is limited because
the international classes and book genres to which DecisionWise

refers are broad.[20]

"The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." See Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006). This case is no exception. DecisionWise may be able to show that the likelihood of confusion does not outweigh its First Amendment interest. But such a finding cannot be made on the present record.

IV. Conclusion

Accordingly, the motion to dismiss (ECF No. 15) is hereby denied.

So ordered this 28th day of March 2018.

_____
/s/
Robert N. Chatigny
United States District Judge

---

[20] Class 16 includes "paper, cardboard and certain goods made of those materials." See Nice Agreement Tenth Edition, https://www.uspto.gov/trademark/trademark-updates-and-announcemen ts/nice-agreement-tenth-edition-general-remarks-class. Class 41 includes "services rendered by persons or institutions in the development of the mental faculties of persons or animals, as well as services intended to entertain or to engage the attention." Id.